IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| LAMPHONE PHONGSAVANH, | ) | Case No. 4:25-cv-00426-SMR-SBJ |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER ON PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| CORY WILLIAMS, Chief Jail | ) | |
| Administration, Polk County Jail, KEVIN | ) | |
| SCHNEIDER, Polk County Sheriff, TODD | ) | |
| LYONS, Director of United States | ) | |
| Immigration and Customs Enforcement, | ) | |
| SAMUEL OLSON, United States | ) | |
| Immigration and Customs Enforcement, | ) | |
| SIRCE OWEN, Acting Director of Executive | ) | |
| Office for Immigration Review, KRISTI | ) | |
| NOEM, Secretary for United States | ) | |
| Department of Homeland Security, | ) | |
| PAMELA BONDI, United States Attorney | ) | |
| General, and DONALD J. TRUMP, | ) | |
| President of the United States, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Lamphone Phongsavanh seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention by Immigration and Customs Enforcement ("ICE"). [ECF No. 1]. Phongsavanh, a native of Laos, was detained on July 29, 2025, following a routine supervision check-in with ICE. [ECF No. 1-7]. The Government cited a "change of circumstances" creating "a significant likelihood of removal in the reasonably foreseeable future" as justification for his detention. *Id.* More than three months later, Phongsavanh remains detained and has not been removed from the country. He argues his detention violates the Fifth Amendment and the Immigration and Nationality Act. [ECF No. 1 ¶¶ 85–89, 90–95]. For the reasons stated below, the petition is GRANTED.

I.    BACKGROUND[1]

Phongsavanh is a citizen of Laos.  *Id.* ¶ 19.  During the Vietnam War, his father and grandfather fought against the installation of a communist government in Laos.  *Id.* ¶¶ 32–33. Following the communist victory, Phongsavanh was sent to a "communist reeducation camp" which, in reality, was a forced labor camp.  *Id.* ¶¶ 36–37.  He eventually escaped, reunited with his family, and fled Laos in 1978.  *Id.* ¶ 32.  At age 15, he entered the United States as a refugee in 1981 and became a lawful permanent resident in 1984.  *Id.* ¶¶ 40, 42.

In May 1996, Phongsavanh pled guilty to state charges of second-degree theft.  *Id.* ¶ 43. He received credit for time served and was ordered to pay $100 in restitution.  *Id.*  In April 1997, Phongsavanh pled guilty to two counts of child endangerment and one count of possession of a controlled substance.  *Id.* ¶ 44.  He was released on parole in April 1999.  *Id.*

Phongsavanh's criminal convictions made him subject to removal from the United States. *Id.* ¶ 48.  Accordingly, after his release on parole, he was ordered to appear before an immigration judge.  *Id.*  On September 27, 1999, the immigration judge ordered him removed to Laos.  *Id.*; [ECF No. 1-3].  The immigration judge also granted a deferral of removal under the Convention Against Torture ("CAT"), finding that Phongsavanh would face a threat of torture or death if returned to Laos.  [ECF No. 1 ¶ 48, 1-3].

Phongsavanh was detained for 90 days following the removal order while the Government sought to identify a third county willing to accept him.  *Id.* ¶ 66.  After this 90-day period, he was released from custody under an order of supervision pending removal.  [ECF No. 1-5].  His release

---

[1] The following facts are drawn from Phongsavanh's petition and supporting documents to which his attorney verified were true and correct to the best of her knowledge.

was subject to certain travel restrictions, appearance at required medical examinations, compliance with federal and state law, and in-person reporting requirements.  [ECF No. 1-6].

The record contains no indication that Phongsavanh violated any terms of his supervision over the next 25 years.  However, on July 29, 2025, ICE officers took him into custody during a routine supervision check-in.  [ECF No. 1 ¶ 53].  He received a "Notice of Revocation of Release" stating that he was being detained pursuant to 8 C.F.R. § 241.13.  [ECF No. 1-7].  The notice informed Phongsavanh that a "change of circumstances" had created "a significant likelihood of removal in the reasonably foreseeable future" and that "[e]fforts to remove you from the United States are ongoing."  *Id.*  But the notice did not detail any changed circumstances.  *Id.*  Phongsavanh has not been informed of any country willing to accept him and the Government concedes that no such country has been identified.  [ECF No. 1 ¶ 75].

On August 27, 2025, Phongsavanh received a "Notice to Alien of Interview for Review of Custody Status" scheduling an interview for October 17, 2025, to determine whether he would be recommended for release.  [ECF No. 1-9].  The results of this interview are not within the record.

On October 27, 2025, Phongsavanh filed this petition for writ of habeas corpus along with a complaint for declaratory and injunctive relief.  He alleges that his detention violates the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act.  [ECF No. 1 ¶¶ 85–89, 90–95].  Phongsavanh seeks a writ requiring his release from custody.  *Id.* ¶ 96.  He also requests declarations that he has complied with the conditions of his supervision, that his detention is unlawful, and that he is not removable "for the reasonably foreseeable future."  *Id.*  He further seeks an opportunity to be heard regarding any future removal plan.  *Id.*  Finally, he asks the Court to enjoin any future detainment—and declare that ICE may not revoke his order of supervision—without complying with 8 C.F.R. § 242.4(1).  *Id.*

## II.    LEGAL STANDARDS

Federal courts have statutory authority to hear habeas corpus petitions from persons claiming to be held in custody in violation of the Constitution, federal laws, or treaties of the United States. *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (citation omitted). This authority extends "to those in immigration detention." *Roble v. Bondi*, --- F. Supp. 3d. ---, 2025 WL 2443453, at *2 (D. Minn. Aug. 25, 2025) (citing *INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001)).

As a habeas petitioner, Phongsavanh "bears the ultimate burden of showing that his detention violates the law." *Yee S. v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2879479, at *4 (D. Minn. Oct. 9, 2025) (citing *Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966)). But 8 C.F.R. § 241.13(i)(2) places the burden on the Government "to establish that 'changed circumstances' justified the revocation of release." *Id.* (citations omitted). The regulation reflects the general principle that the burden of proof falls on the party seeking to change the present state of affairs. *Roble*, 2025 WL 2443453, at *4 (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). Here, the Government seeks to change the status quo—Phongsavanh's release on supervision—and thus bears the burden of demonstrating that changed circumstances justify his detention. *Id.*

The Government's ability to detain, release, and revoke the release of noncitizens subject to removal orders is governed by specific regulations. *Yee S.*, 2025 WL 2879479, at *3. Subject to certain exceptions, 8 U.S.C. § 1231(a)(1) provides a default 90-day period within which the Government must ordinarily remove a noncitizen subject to a final removal order. *Id.* This removal period begins on the latest of three dates: the date the removal order becomes administratively final; if the order is judicially reviewed, the date a court orders a stay of removal; or if the noncitizen is detained, the date of release. 8 U.S.C. § 1231(a)(1)(B).

-4-

A noncitizen may be detained beyond the default 90-day removal period, but not indefinitely. *Zadvydas v. Davis*, 533 U.S. 678, 688–89 (2001). If the noncitizen is not removed within that period, the Government generally must release the individual from detention and place him on supervised release. 8 U.S.C. § 1231(a)(3); *see also Zadvydas*, 533 U.S. at 701 (establishing a presumptively reasonable six-month period for post-removal-order detention). Such supervision may include requirements that the noncitizen periodically appear before an immigration officer, submit to necessary medical and psychiatric examinations, provide information about his nationality and activities, and comply with reasonable restrictions on his conduct. *Id.*

The re-detention of a noncitizen on supervised release is governed by 8 C.F.R. § 241.13(i). *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023). Although the United States Court of Appeals for the Eighth Circuit has not addressed the issue, the First Circuit has held that re-detention requires an individualized determination by ICE that, based on changed circumstances, removal has become significantly likely in the reasonably foreseeable future. *Id.* The regulation provides that ICE may re-detain a noncitizen "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). And as the Supreme Court made clear in *Zadvydas*, if removal is not reasonably foreseeable, continued detention is neither reasonable nor authorized by statute. 533 U.S. at 699–700.

In determining whether removal is significantly likely in the reasonably foreseeable future, ICE considers several factors: the noncitizen's efforts to comply with the removal order; the history of ICE's efforts to remove individuals to the destination country or to third countries; the ongoing nature of ICE's efforts to remove the particular noncitizen and his assistance with those

efforts; the reasonably foreseeable results of those efforts; and the views of the Department of State regarding the prospects for removal to the countries in question.  8 C.F.R. § 241.13(f).

Upon revocation of supervision, the noncitizen must "be notified of the reasons for revocation" and promptly provided "an initial informal interview."  *Id*. § 241.13(i)(3).  At that interview, the noncitizen may submit evidence regarding the likelihood of removal and respond to the reasons for revocation.  *Id.*  If the Court determines that "removal is not reasonably foreseeable," continued detention is nether reasonable nor authorized by statute.  *Zadvydas*, 533 U.S. at 699–700.

## III.    ANALYSIS

Phongsavanh raises two challenges to his detention.  First, he argues that his re-detention 25 years after his removal order became final violates the Immigration and Nationality Act.  [ECF No. 1 ¶¶ 85–89].  Specifically, he claims that his detention during the post-removal period violates 8 U.S.C. § 1231 and entitles him to immediate release.  *Id.* ¶ 89.  Second, he contends that his detention violates the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable.  *Id.* ¶ 94.  Because the Court can resolve this case on statutory grounds, it need not address the constitutional claim.  *See United States v. Turecheck*, 138 F.3d 1226, 1229 (8th Cir. 1998) (citing *Cnty. Ct. of Ulster Cnty. v. Allen*, 442 U.S. 140, 154–55 (1979)).

The Government contends that the Court lacks jurisdiction to entertain Phongsavanh's challenge.  Supreme Court precedent forecloses this argument.  "[H]abeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."  *Zadvydas*, 533 U.S. at 688.  The Government correctly notes that 8 U.S.C. § 1252 strips the Court's jurisdiction to review decisions to execute removal orders and that the Foreign Affairs Reform and Restructuring Act forecloses review of CAT-related claims.  [ECF No. 24 at

7–8]. However, Phongsavanh does not challenge his removal order. He challenges the revocation of his supervision and his detention. These claims do not implicate the statutory bars to jurisdiction. The Court thus has jurisdiction over his petition.

The parties dispute the allocation of the burden of proof. *Cf. Balouch v. Bondi*, Civil Action No. 9:25-CV-216-MJT, 2025 WL 2871914, at *2 (E.D. Tex. Oct. 9, 2025) (placing burden on the Government to establish changed circumstances); *Abuelhawa v. Noem*, Civil Action No. 4:25-cv-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) (requiring the petitioner to make threshold showing before burden shifts). The Government contends that Phongsavanh bears an initial burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In contrast, Phongsavanh asserts that the burden rests entirely on the Government to show that removal is significantly likely in the reasonably foreseeable future. *Id.*; [ECF No. 1 § 84]. The Court need not resolve this dispute. Even assuming Phongsavanh bore the initial burden, he has satisfied it. He alleges that his CAT deferral remains in place, that no third country willing to accept him has been identified, and that the Government has been unable to secure travel documents for his removal in the past 25 years. The burden therefore falls on the Government to demonstrate a significant likelihood of removal in the reasonably foreseeable future. The Court concludes that the Government has failed to carry this burden.

The circumstances here mirror those in numerous recent habeas cases involving re-detained noncitizens released on supervision. In the substantial majority of these cases, courts have granted relief after finding that the Government failed to identify sufficient changed circumstances or demonstrate a significant likelihood of removal in the reasonably foreseeable future.

-7-

For example, in *Yee S. v. Bondi*, the court held that the Government's assertion that it was "in the process of obtaining a travel document" fell short of showing a significant likelihood of removal in the reasonably foreseeable future. 2025 WL 2879479, at *5. The Government could not identify any progress made toward removal since detention began or any country willing to accept the petitioner. *Id.* Likewise, in *Roble v. Bondi*, the court granted the writ after concluding that the Government had failed to show the petitioner's removal was any more likely than when he was initially released on supervision. 2025 WL 2443453, at *5. This was so even though the Government had requested third-country removal assistance from its Enforcement and Removal Operations Headquarters. *Id.* at *4.

Courts have granted relief even where the Government presented more substantial evidence of potential removal. In *Nguyen v. Hyde*, the district court held that the Government failed to establish changed circumstances despite a new repatriation agreement with the petitioner's home country. 788 F. Supp. 3d 144, 151 (D. Mass. 2025). The court also rejected the Government's reliance on data showing exponential growth in removals to that country, finding the data inadequate because it did not specifically address similarly situated individuals. *Id.* at 151–52. The Government's case was further undermined by its inability to specify what stage of processing the petitioner's travel documents had reached or the anticipated wait time for receipt. *Id.* at 152. Similarly, one court concluded that evidence of recent removals to China did not establish a likelihood of obtaining a travel document for the petitioner absent specific evidence that obstacles to *his* removal had been overcome. *Liu v. Carter*, Case No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025).

These cases reflect a broader pattern. District courts nationwide have consistently granted habeas relief to similarly situated petitioners, even in cases where the Government provided much

-8-

stronger evidence to support revocation of supervision than it did here. *See, e.g.*, *Phan v. Noem*, Case No. 3:25-cv-02422ORBM-MSB, 2025 WL 2898977 (S.D. Cal. Oct. 10, 2025); *Villanueva v. Tate*, --- F. Supp. 3d ----, 2025 WL 2774610 (S.D. Tex. Sept. 26, 2025); *Zavvar v. Scott*, Civil Action No. 25-2104-TDC, 2025 WL 2592543 (D. Md. Sept. 8, 2025); *Sarail A. v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2533673 (D. Minn. Sept. 3, 2025); *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113 (E.D. Tex. Aug. 2, 2025); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771 (E.D. Cal July 16, 2025); *Tadros v. Noem*, No. 2:25-cv-04108-EP, Order, ECF No. 17 (D.N.J. June 17, 2025).

The Court is mindful that it must defer to the Executive Branch's "greater immigration-related expertise" and respect "the serious administrative needs and concerns inherent in the necessarily extensive" efforts to enforce our nation's immigration laws. *Zadvydas*, 533 U.S. at 700. The Government has not identified any factually analogous cases in which courts found changed circumstances or a significant likelihood of removal in the reasonably foreseeable future. However, the Court notes that not all courts have granted relief in cases involving re-detention. In two cases, for instance, district courts have found that the Government presented sufficient evidence to justify continued detention. *See Thai v. Hyde*, 788 F. Supp. 3d 57, 60–61 (D. Mass. 2025); *Bailey v. Lynch*, Civil Action No. 16-2600 (JLL), 2016 WL 5791407, at *4 (D.N.J. Oct. 3, 2016). Those cases, however, are materially distinguishable.

In *Thai*, the petitioner violated the terms of his release, prompting his re-detention and ICE's determination that there was a high likelihood of his removal in the foreseeable future. 788 F. Supp. 3d at 59. The court upheld the detention because the petitioner had not been admitted or paroled upon entry into the United States and because he did not challenge ICE's compliance with the regulations permitting detention for violations of release conditions. *Id.* at 60. The present

case is materially different.  Phongsavanh expressly challenges his detention, and the record contains no allegation that he violated any conditions of supervision.  Further, in *Thai*, the government demonstrated that at least 25 similarly situated individuals had been removed to the petitioner's home country.  *Id.*  The Government has made no comparable showing here.

*Bailey* is equally inapposite.    There, the Government demonstrated a change in circumstances when it obtained the petitioner's birth certificate, which confirmed his Jamaican nationality and made removal likely.  *Bailey*, 2016 WL 5791407 at *4.  The petitioner was not promptly removed only because he refused to acknowledge his Jamaican birth, thus preventing issuance of a required travel document.  *Id.* at *3.  His own conduct—not any failure by the Government—created the obstacle to removal.  *Id.*

Here, by contrast, the record contains scant evidence of changed circumstances or a significant likelihood of removal in the reasonably foreseeable future.  Phongsavanh has been detained in the Polk County Jail for more than three months.  The Government's notice of revocation offered only the conclusory statement that "[e]fforts to remove you from the United States are ongoing and ICE expects your removal in the reasonably foreseeable future." [ECF No. 1-7].  The Government has not identified any third country willing to accept Phongsavanh.  Nor has it has made any meaningful progress toward requesting or securing his travel documents.  *See Piao v. Lyons*, Case No. 1:25-cv-1725, 2025 WL 3046783, at *3 (E.D. Va. Oct. 31, 2025) (denying writ of habeas corpus because petitioner's travel documents had been approved); *Abuelhawa*, 2025 WL 2937692, at *9–10 (granting relief where the government failed to show it had secured or was likely to secure a travel document).  The Government has acknowledged that only general steps are being taken nationwide to remove similarly situated individuals.  It concedes that no specific steps have been taken to identify a third county willing to accept Phongsavanh.  This falls well

short of demonstrating changed circumstances or a significant likelihood of removal in the reasonably foreseeable future.

The evidence submitted by the Government at the show cause hearing is also insufficient. Specifically, the declaration of an ICE Deportation Officer stating that Phongsavanh was detained "to pursue 3rd country removal" as ICE is "actively working with the Department of State and DHS on avenues to remove aliens to a third country" does not demonstrate an individualized determination that changed circumstances now render Phongsavanh's removal in the reasonably foreseeable future significantly likely. [ECF No. 25-2 ¶ 18]. The assertion that Phongsavanh has a pending post-order custody review comes closer to meeting this standard, but it still falls short as there is no evidence regarding a plausible timeline for this decision or the likelihood that a resolution in this proceeding would support removal. ¶ 19. These issues are further compounded by the CAT deferral to Laos, no identified third country willing to accept Phongsavanh, and no request for travel documents made to any country.

Moreover, Department of Homeland Security's motion to reopen Phongsavanh's immigration case—filed November 3, 2025—to terminate the 1999 CAT deferral does not compel a different outcome. [ECF No. 25-3]. The Court has no timeline for the resolution of that motion or the likelihood of its success. The proceedings are currently pending before an immigration judge without a clear deadline for a decision, subject to appeal to the Board of Immigration Appeals, and potentially subject to judicial review after that. The Government admits that it does not know how long these proceedings may take, but it concedes that the process will take more than 90 days and there are a number of steps involved. Even if the Government were successful on this motion, additional steps—such as requesting and securing a travel document—would be

necessary before Phongsavanh could be removed to Laos.  This action thus does not demonstrate a significant likelihood of removal in the reasonably foreseeable future.[2]

In sum, nothing in the record explains what has changed during the 25 years Phongsavanh was under supervision that would now justify his detention or demonstrate a significantly likelihood of his removal in the reasonably foreseeable future.  A remote possibility of eventual removal does not satisfy the regulatory standard.  *See Escalante*, 2025 WL 2206113, at *4 (citation omitted).  The Government has failed to carry its burden under 8 C.F.R. § 241.13(i)(2).  That regulation embodies the Executive Branch's own procedural requirements, and agencies must comply with the rules they promulgate.  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

The Court will grant Phongsavanh's petition for a writ of habeas corpus and order him released under the conditions imposed by his original order of supervision.  However, the Court will not grant the full scope of declaratory and injunctive relief he requests.  Because the writ resolves the legality of his current detention, his remaining requests for relief will be denied.  [ECF No. 1 ¶ 96].  The Court's order does not invalidate the removal order, but the Government must comply with its own regulations.  Absent a violation of the conditions of his order of supervision, the Government may not revoke Phongsavanh's supervision and detain him without demonstrating

---

[2]The record contains numerous errors in the Government's documentation concerning Phongsavanh.  *See* [ECF No. 1-2] (misspelling Phongsavanh's first and last name); [ECF No. 1-3] (misspelling first name); [ECF No. 1-4] (misspelling last name); [ECF No. 1-7] (listing detention date as June 27 rather than July 29); [ECF No. 1-9] (providing proof of service for different detainee); [ECF No. 25-1 at 1] (stating Phongsavanh is unemployed or retired); *id.* at 2 (listing detention date as February 18); *id.* (stating that Phongsavanh entered the country through California); *id.* (stating that Phongsavanh entered the United States in 2007 rather than 1981); *id.* at 3 (stating that Phongsavanh "has no fear of persecution or torture if removed to Laos" despite CAT deferral).  These errors undermine the reliability of the Government's representations and raise concerns about the care with which it has evaluated Phongsavanh's case.

that changed circumstances create a significant likelihood of removal in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(2).  The Government has not made that showing here.  Phongsavanh's detention is therefore unlawful, and he must be released.

## IV.    CONCLUSION

For the reasons stated above, Phongsavanh's petition for writ of habeas corpus is GRANTED.  His requests for declaratory and injunctive relief are DENIED.  The Government is hereby ordered to release Phongsavanh from custody without delay and restore him to supervision under the conditions set forth in his original order of supervision.  Pursuant to 28 U.S.C. § 1746, the Government shall promptly provide a declaration to the Court confirming Phongsavanh's release from custody.

IT IS SO ORDERED.

Dated this 7th day of November, 2025.

STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT